Mr. Russell, when you're ready, come on up. Have you been out there all morning? Have you been out there since the beginning? No, Your Honor. I came in a little bit later. Good. I didn't have to have the crowd coming in. May it please the Court, Dylan Russell for the appellants. I'd like to focus my time on our first issue in our brief, whether these contracts are district contracts under section 49271E of the Water Code. We believe the Court should reverse the final judgment for a fact finding on the proper amount of offsets for economic disincentives for four primary reasons. First, the economic disincentives scheme, that public policy decision outlined by the legislature, should be enforced by the courts, of course. Secondly, the fact that the legislature used the term economic disincentives as opposed to liquidated damages, we think under Texas statutory construction principles, they should be treated as two different things. Third, the Flores v. Millennium Interest case gives an example of where there's a statutory penalty scheme, and the Court said that whether you've actually suffered any damages or not is irrelevant, and it would belie the purpose behind the statute, at least in that case, the Flores case, to create a penalty, and there was some concern by one of the justices who wrote a concurring opinion, that was Justice Wainwright, saying sure, there are constitutional limitations on a penalty that becomes so extreme that it violates due process. So the legislature here obviously took that into consideration. And then the fourth point, why we believe the district court should find, I'm sorry, why this court should find that this is a district contract, is for a number of reasons that I'd like to discuss, most of which are based on a matter of law, contract construction principles, as well as the facts we have here, which are conclusively established. So as to the statutory construction reasons why these three contracts are district contracts, the first is there's a bunch of language throughout Chapter 49 that has this repeated phrase similar throughout, you know, this section or this subsection only applies to a district. There is no such section in this subchapter I where 49271E is found. So that would have been an opportunity for the legislature to say, wait a second, you're not going to take advantage of these economic disincentives provisions unless this provision only applies to a district. Well, counsel, I haven't studied Chapter 49 as thoroughly as you have, but it covers a wide variety of special purpose districts. So we don't look at each of these provisions with the idea of this kind of district in mind. It's a generic set of statutes, it seems to me, that consider far more than the kinds of districts that help backstop the development of infrastructure and developments. And so I think we need to interpret it with that in mind, that we don't make some sort of special definition because of the district you're talking about. As I recall the response from the other side from what you said,  and other reasons why they might have wanted to be more specific than in other situations. Well, there's no doubt that the definition of district in Chapter 49 applies to the specific municipal utility district. And a lot of other kinds of districts. Absolutely. So it's not a much specific 49271. It covers everything. So we need to interpret it not just with the way MUDs operate, which seems to me to be part of your argument. And what happened here is not that much different than the way it's supposed to operate, with the district actually issuing the contract. And so we ought to read it and sort of consistent that not much different happened in this case than would have happened if the district had actually executed the contract. But what bothers me about that is that this is not just MUD contracts we're talking about here. We're talking about every kind of special use purpose district that's recognized by Chapter 49. I don't think there's any question that Section 49271E applies to MUDs. It applies to all kinds of districts that are covered under Chapter 49. The only question here is whether a non-district, a non-governmental entity like my clients, can take advantage of that statute. When the contract itself says it is building infrastructure, the type of infrastructure that is covered by governmental entities, the question is whether when the contract conclusively establishes, the testimony conclusively establishes a common practice and scheme that is regulated by the TCQ that says if you have a district contract in the sense that the subject matter of the contract is for a district only to be purchased by the district later, then it applies. Why not just the plan? When I was rereading the September hearing you had on this, it looked to me, but correct me if I'm wrong, the argument was more this is the functional equivalent of the MUD. They were so involved, their contract and the caption. It was less that as a matter of law sort of an eerie guess. No? Our position is not that we are districts. Our position is that the definition of a district contract includes contracts where private parties are building infrastructure that the MUD will then later purchase, and that's exactly what has happened throughout. So how do you deal with Section A? Section A is just that's an – well, we do not dispute. It is undisputed that every contract in which a district is a party, it obviously applies. The question is, is it that narrow? And A is simply saying if you do enter into a contract board on behalf of a district, then it must comply with these provisions. But that's not an exclusionary. So purely private contractor contracts can get the benefit? If, only if, and there's no dispute that this contract fits the bill, only if the subject matter of the work, the infrastructure here, is going to be purchased by the district. And I cited in our introduction page. That will always happen in these cases. That's the goal always, right? The infrastructure is purchased. That's right. I mean, this has been going on. So what's the best authority for that interpretation? I mean, we don't have much. Well, actually, I think the best authority for that is the McGregor Act, 2253 of the Government Code, which has a definition for what I think is sort of synonymous. It's a broader subset of what a district contract is. But the definition of a public work contract in the McGregor Act, it's the fourth definition on 2253.001.4, is the definition of a public work contract. And it is, quote, a contract for constructing, altering, repairing a public building, or carrying out any public work. So in other words, there's an example of when the legislature is saying, you have a public work contract, here's how we define it by the subject matter of what the construction work is all about. And then the first definition in that definition section of the McGregor Act is a governmental entity. And there's no surprise about what a governmental entity is. It's pretty similar to the Tort Claims Act. So getting to closing the loop on this analysis, if you look at, read the McGregor Act, it is clear that if you have a governmental entity that enters into a contract with a prime contractor, when the prime contractor enters into contracts with subs and the subs enter into contracts with subs, those are all still public work contracts because they're still doing the work. They're providing the materials. So if they put in, even if it's not just an offset, if it's a liquidated damage penalty, all the way down the chain, all those private contracts, can't put those in? I would say yes if those are district contracts under the Water Code. Now, there's a lot of governmental entities under the McGregor Act that don't fit within Chapter 49. So when you look at the district court's opinion, it gave this sort of absurdity hypothetical of someone enters into some contract and it happens to benefit the MUD. Is that a district contract? No, as a matter of fact, and no, as a matter of law. And what I mean is if I just find out after I've entered into a contract or the contract has been fully performed, oh, well, look, we've done something that benefited the MUD, you can't say, well, I claim this to be a district contract. Let me ask you this. It seems to me the general concept from some of what you have shown us in your briefing is that the MUD generally comes in at the end of the process, not at the beginning, that some developer maybe in a rural area wants to develop subdivision, has to put in the infrastructure. Ultimately, some of that's got to be sold, and it's later that the MUD actually takes over the project. It seems to me what you're arguing for would be a fundamental restructuring of the usual MUD process where you are putting the district right at the beginning effectively by your interpretation of 49-271. No, I mean I think the way this is the way it's done in Texas, you have a developer who begins to develop a subdivision, and they set up the MUD district, and they're usually on the board of the district. Then as each section is built out, then those homes get – the lots get sold to homebuilders, the homebuilders build the homes, the homebuilders sell. A little bit ahead, you're saying the MUD is already – I mean how is it participating? Is it participating in a legally enforceable way with contracts? No, the MUDs are set up at the same time before the subdivision is actually platted and developed, and the reason they do that – and here's what developers do. They come in and say we want to build a subdivision, and they understand that at some point the property usually – residential homes, sometimes there's commercial – they get on the tax rolls. That's when the MUD has the income, the revenue, through taxes to then reimburse the developers. But no homebuilder or no developer of subdivision homes is ever going to buy land that it doesn't – it isn't sure that a MUD is going to take over at some point and buy that infrastructure. So before – I'm trying to make sure there's something else to have contracts to which 49271 applies. When was the first participation by the MUD here in any contractual way? I think it's in the record of the deposition of Jerry LeBlanc, and he talks about it a little bit, and we talk about it's a couple of pages in the record, 759 and 762, 752, 753. Those are provisions – those are sections of his deposition where he's talking about the way this works. And so they enter into what are called – what developers call reimbursables. The 28J letter I had has a – from the different perspective of the MUD, they call it a pre-funding agreement, and all this is in the TCEQ rules. So what happens is they enter into a contract before the development even breaks ground with the MUD. So the developers in the MUD are entering into a contract saying that, MUD, you promised to buy this infrastructure after I have all the risk and the out-of-pocket cost to build it. Once I build it and it's been approved by the MUD's engineers to make sure it's going to last, we're not going to have sewer line leaks, once they've gone through all of that process, and then the lots get platted and then they get sold, it gets on the tax rolls, and now the MUDs can tax those homeowners, and now they have the income stream, and then pursuant to those contracts with the developers, like my client, they can reimburse. And that's what all of this case law – I had two cases in footnotes, in one footnote of my introduction paragraph of my opening brief, and it points out that this has been going on at least since 1995. And the statute, according to the legislative history, was this 49271E was, I believe, enacted in 2003. So we have to assume that the legislature knew that this practice had long been going on in Texas. And so they understood when they set up the scheme of economic disincentives with district contracts that they understood that this is exactly what MUDs were going to do. They were going to enter into these reimbursable pre-funding agreements with developers. The developers would build out, do the construction, hiring people like the hassle group here that failed, and that after all that was completed, they would get reimbursed. And those are valuable contracts that are sometimes sold and assigned. But I do want to – pointing back to the legislative language, the choice that they made here, there's a couple of sections. We cited one in our brief, but there's just a few more in the Water Code that give specific examples of when the legislature intends to require the district to be a party, a signatory party to the contract for it to be a district contract. And there's three sections I'll point to, 49.151A, 49.198B, and 49.445C. Those three, I'll just read the quotes from those three sections. You don't have to read the quotes. I guess with time running out, why – MUD could have signed this. Do you have any insight from this record why they didn't, number one? And number two, couldn't the contractors have been designated the official agents of MUD? I guess that's possible, but I think the MUDs smartly don't want to take any liability risk until the construction work is done, these lots are on the tax rolls, and they can then be guaranteed to at least tax those homeowners who will then pay for these reimbursement contracts. Thank you. Good afternoon. May it please the Court, Brandon Baines on behalf of the Hanover Insurance Company. We just spent a lot of time talking about some fairly erudite, intellectually intriguing contract construction, statutory construction, and we can go down that road. I'll submit that while maybe it's fun to talk about in a bar room, it has no applicability ultimately to what happens in this case. Even if we stipulate that the Water Code applies, which it doesn't, and even if this is a district contract, which it's not, there still is going to be the absolute fundamental question of, okay, we've got a statute that says you can use an economic disincentive. So that's buried in a contract that they didn't draft, they didn't look at, they didn't even think about. It was a form pulled out of the file cabinet. The question is, is that a penalty under Texas law? That's what we're really here about today. We're here about, is a per diem damage for late completion an unenforceable penalty? And whether the Water Code applies or not, there still is going to be that fundamental question. I'm a little lost. I mean, if Mudd had signed this, Mudd could have insisted on the penalty pursuant to 271, right? No. There is nothing in 271 that says we're allowing penalties. Texas law says if there is a per diem damage, whatever we call it, economic disincentive, a liquidated damage, a tardiness tally, a late levy, whatever else I can come up with on the spot to be clever, it still has to be a penalty analysis. Okay. Well, I may have been under a terrible misimpression, and I thought the point of this statute was to allow public works contracts to still include that so they can't be tardily billed. The statute allows the Mudd or the special district to include an economic disincentive. Right. But that's not anything different than saying that we're going to allow a liquidated damage. To be clear, and this I think is getting lost throughout all this, Hanover's position is not that liquidated damages are per se unenforceable. It is not that economic disincentives are per se unenforceable. There are LD provisions that are enforced. The question is, does that provision operate as a penalty? If it does, it's unenforceable. If it doesn't, we're going to allow it. So whether or not the Mudd. If you're 87 days late, do you get penalized or not? I thought 271 allowed it if it's a district contract. No. It does not allow that. The question still holds. So what's your best case for that? Phillips, FPL Energy. All of the cases that talk about per diem damages for late completion. Those are in the context of 271 Mudd contracts. In the context of the law of contracts in general. But what's one specific to a district contract? I do not believe there is any case specific to that final. What I thought the argument that was being made and was made below is that this contract wasn't one made. Hence, that penalty can't be enforced. Now you're saying it's irrelevant who signed it. Even had Mudd signed it, it couldn't be enforced because it's an unenforced penalty. Is that your argument now? Yes, sir. If the Mudd could not establish those factors, that the damages were difficult to estimate, that there was some sort of forethought or analytical study on what the damages would be, that the damages that were actually incurred don't grossly exceed the delay damages. And here. Let me stop you there. You're making a distinction from the case law between penalties and economic incentives and disincentives. Is that a distinction the case law holds up, that you can have a provision regardless of district or who you are, you can have an economic disincentive in yours so long as it's not a contract, so long as it's not a penalty? Yes. The case law bears that out, that the law is smarter than magic words. Well, that may be. But it seems to me that this case had been argued that penalty equals economic disincentive. You're telling me that's not Texas law, that there are economic disincentives and at some more expensive level there are penalties. And there's case law to support that. I don't know that I would say it's more expensive. I would say, again, that economic disincentives can be enforced. Expensive is the wrong word. But those have less of a connection to maybe the reality of what actually is the damage. No, I think. Let me back you up. Is this the argument that was made in district court? The argument that was just advanced by Mr. Russell or mine? Or by you? Yes. That 271 is irrelevant, that we're not worried about economic disincentives. What we're worried about is penalties. And so we shouldn't even worry about 49271. I'm overstating what your argument would have needed to be. But is that basically what you argued initially? Yes, and I guess I would also say maybe the other side of that coin is this is not a district contract. Well, that's not the other side of the coin, unless I'm wrong. Where in the district court's opinion that we're reviewing is there this first argument, other than this isn't a district contract? Where did the district court approve of the argument you're making now? So the district court did go through and find that the Water Code does not apply. The district court then went and said, and oh, by the way, if we do the factors test to determine whether or not this clause operates as a penalty, it does operate as a penalty. And really that was undisputed by the developers throughout the entire case. It's undisputed here. They acknowledged that the clause fails as a penalty. The argument is we don't want it to apply. We want this court to strike anew and say that we are not going to apply any sort of penalty analysis in Texas for an economic disincentive under the Water Code that we were fortunate enough to have in a contract that we didn't read and didn't draft, and lo and behold it was there and we want to take advantage of it. That's what's being asked of this court. So the district court said, no, let's look at this provision. It operates as a penalty. It's unenforceable. Well, again, that's going to the second argument in the alternative. But are you defending it at all the first argument? Yes, absolutely. I think it fails for all of those reasons. I do not think it's a district contract. I do not think the Water Code applies. But I'm saying even if you disagree. You're saying it's not a district contract because it wasn't made by it? Because it wasn't entered into by. The Texas LLCs that are the developers in this case are not special or. . . But who made this contract. It says MUD on the top. It was made and provided by the MUD. They may not have entered into it, but that isn't the language of 271A. It is a form MUD contract that Mr. LeBlanc testified he used. But isn't that literally made by MUD? It's a form MUD contract made. . . I don't know that I agree. I could find a Department of Interior contract and use it as a form. That doesn't make me the federal government. No, I'm not saying it doesn't make you the federal government. I'm saying just according to the law, who made it? Who made it? MUD made it. It's their form. I disagree because it's no different than just finding a form you like and signing it. That doesn't mean the MUD made it. So who made it then? It was Binnacle Loan Trail. These entities decided to use that language. Use it. Yes, sir. So is your argument as to the first, the primary reason given by the district court, that it actually requires the MUD to be entering as a signatory? Is that what your argument is? Yes, I'm saying that a district contract by definition is a contract entered into by the district, which is undisputed, did not occur here. I'm further saying even if you all . . . What's your best case authority for that, that it has to actually be entered into? Even if they provided it, they made it, they're the ones who did the bidding process, they're the ones that will eventually get the infrastructure process. What's the case that says, no, it's got to be signed by them? I think the case is all the cases that deal with contractual and statutory instruction on . . . I don't know your best one. I don't know, sir, that there's a case that says a district contract means that it enters by a district. It's the plain English. And the argument by the developers is asking this court to go beyond that and to look at things like attributive nouns and all the mental gymnastics that go into saying the words don't actually mean what they say. I will submit there is not a case that specifically says a district contract means a contract executed by a district. But I'm not saying no mental gymnastics, nothing esoteric about what does the word made mean? Who made it? Who made the document piece of paper that was signed or who made the agreement? Who made the agreement? That formed between two parties. We may have some difference of opinion about how that works, and of course he's just asking questions. Let me ask you insofar as the district court's view, did the district judge specifically address that . . . or state that the district . . . that the MUD, M-U-D in this case is the district, did not make this contract? Did he specifically state that? Maybe not in those terms, but that 271 subpart A doesn't apply because the district did not sign, execute, or otherwise involve itself in this contract. I believe so, in so many words, because again, Judge Brown found that it was not a district contract. He found that the argument was going to be too broad if carried to its logical conclusion that under the definition advanced by the developers, any contract that at all relates to this MUD could somehow qualify as a district contract. He thought that led to absurd results. That's also what the case law talks about when trying to look at these phrases. So yeah, I believe that Judge Brown said that doesn't make any sort of sense to go that far. I'm just going to ask you to be particular. When you say that's also what the case law says, that that logic would lead to absurd results, what is the case you're talking about? Again, I'm talking about statutory construction cases. I am not representing to this court that there is a case that says a district contract under 479A means a contract executed by a district. That does not exist. That has never been put to a question. Again, I submit that even if the court decides somehow this is a district contract, which again I don't think it is, I don't think it has anything to do with this in the same way that if you had a federal contract, somebody way downstream could all of a sudden say it was a federal contract. I don't think it works that way. I still think the threshold question is does this clause operate as a penalty? There is no authority, none, that says that an economic disincentive because we use different words somehow is treated differently. Importantly, the developers don't offer this court any guidance as to what would the standard be. Okay, we get it. It's different words. But how do we judge it? How do we determine if it's enforceable? The only argument is they're different. So now what that means is that if this court agrees with that position, any contract or any party can go and just instead of using the word liquidated damages, we're going to just change the words. Again, we'll use my tardiness tally. And all of a sudden all the penalty analysis for the last 40 years in Texas is gone. That doesn't make sense. Well, let me ask you this then. I'm looking at the contract language now and obviously the fairly extraordinary amount based on this per diem charge. Regardless of whether 271, regardless of whether this is a district contract, let's say it is, and if so a disincentive clause is provided, it seems to me that your argument has a fair amount of persuasiveness that you still have to look at whether that constituted a penalty. This 25, whatever the amount is, and it ends up to the extraordinary amount. And even a district contract could be struck down, not because it has an economic disincentive, but because it is a penalty when you look at how it actually was calculated. That's absolutely correct. But there still could be a lesser amount, or maybe, I don't know what penalty law is in Texas, maybe if it ends up being punitive you throw it all out or whether you get a lesser amount. Well, let me address that point. Again, there are LD provisions or economic disincentive provisions that are held to be enforceable. And what happens in those cases is the party that's seeking to enforce them satisfies the factors. They say, look, we're going to establish that these damages were difficult to estimate. You know, a good example are schools that aren't built on time. That has a real impact, but that's hard to kind of quantify. Sports arenas, that's another one. So you have to satisfy that problem. Then you have to say, and we actually thought about it. We actually thought that if this is delayed, here's the damages that we're going to incur. The courts talk about studies that are done, other analytics to determine the delay. Then, after all of that, there's a backwards-looking test that says, okay, you were delayed. What were the actual damages you incurred? And there, to your point, if it is a grossly excessive amount, the courts say no. Now, even though you met these two factors, even though there was delay, your actual damages don't come in anywhere near to what the L.D.s you're seeking to enforce. Therefore, it's a penalty. Here it's easy. But does the effect of that in that case law mean that there's no extra amount at all, or is it a reasonable amount calculated by the court? It would either be enforceable or not. If it is enforceable, and this is not before this court, there would be a whole other question about, well, how do you count? When was a project actually substantially complete? What was the delay? Is there any concurrent delay? Things like that. But when it's declared a penalty, it's declared unenforceable. And here, yes, sir, it's undisputed that there were zero damages. They did not suffer any damages as a result of the delay. And there's a whole other fight about whether it was even. Judge Brown didn't find that, did he? Yes, he did. He did. And it's undisputed. You're not going to hear any argument. In fact, the testimony in the record reflects they made money. It's kind of this really odd scenario where the jobs were delayed. Because they were delayed, Mr. LeBlanc held all the money. He didn't pay. Whether or not that was proper or not is a different issue. But he didn't pay. He never tapped a line of credit. He never incurred any interest. So it helped him for these jobs to be delayed. They do not disguise the fact they're asking for a windfall. They do not disguise the fact they're asking for penalties to be allowed over the authority of Texas law that says per diem charges have to meet these factors to be enforceable. What would you say? I mean, I don't know if there's any ambiguity in the Water Code or not. Let's say there is. Do you think this case can be decided from your viewpoint, not from your opposing counsel, strictly on the basis that this was a penalty? Yes, I do. Absolutely. Regardless of whether the contract could have included a disincentive clause, this was a penalty. Absolutely. Because whether, again, it's an economic disincentive. Let's go back and think about this clause. Again, people are smart to this stuff. They're wise to how this works. And so let's just say all it said was economic disincentive. You know, hassle, if you were late for every day past substantial completion, we are going to assess an economic disincentive of $2,500 a day, which, again, the fact that it's a round number is always alarming. But if it said that, then the question would be, okay, is that enforceable? And there would still be the exact same factors, difficult to estimate, forethought, grossly excessive. And so I understand, I suppose, why the developers are so focused on this, because it's honestly all they've got. They concede that it's a penalty. They're trying to tell the court that you guys have to make this eerie guess as to what plain words mean, because there's no court that has ever looked at this section of the Water Code. Again, I submit that's not what eerie is about. That's not what an eerie guess is about. An eerie guess is not for this court to say let's go try and strike out new law. The law is already there. If a per diem damage is a penalty, it is unenforceable. Here it is stipulated that it is a penalty. The issue is they just don't want that penalty analysis to apply. There is zero authority in Texas, they've not offered any authority, that says because we have different words, somehow we're going to have a different standard. And I'll submit, and you didn't hear anything to the contrary, they're not even telling you what that standard is. So if we think about what this looks like for Judge Brown, let's assume that you guys don't buy anything I'm saying. And it's the Water Code applies, this is the district contract, Judge Brown, this is an economic disincentive, we're sending it back to you. He's going to say, well now what? What standard do I use? And if we're saying, oh, it's not Phillips, it's not all the progeny of cases on this penalty, it's just accounting, that can't be the answer. Because now we have a section of the Water Code that somehow is supplanting 40 years of Texas authority on penalty damages and contractual damages. Again, that's an overreach, that just doesn't make sense in terms of the larger context on how the law operates in allowing contractual damages. I've got two minutes left. I want to quickly address two other points. Freedom of contract also is a red herring in my opinion. I think we get back, honestly, to the same discussion we're having. Even if somehow you could parrot in this language, that still doesn't answer the question as to whether or not it would actually be enforceable. I also think the record is going to quickly kind of undercut this argument because we're not talking about a contract where there was significant negotiations, a bargain for exchange. They didn't even read it. They didn't even know what it said. They didn't pick the number. So this isn't something where we're saying, oh, freedom of contract, this is so important in Texas, we bargained for this, we put this on our contract. They didn't. Last point, the limitation of liability. First, this was not a pled defense. It was something that kind of came up at the 11th hour on the MSJ. As this court, I'm sure, is aware, limitation of liability clauses are completely different. You see them a lot with alarm companies, saying if we do some sort of tort, we breach our contract, here's our maximum ceiling of damages. That's not what's going on here. Again, I'd submit it's easy for this court because it wasn't even pled. I would also say in the reply brief, there was a new argument that somehow Hanover had a prior material breach and we shouldn't benefit. Again, from a procedural standpoint, prior material breach was not pled as a defense. So that was never even something there. I submit they can't bring it up now. But it also, I think, confuses the issues a little bit. There wasn't a claim against Hanover for breach of its performance bond. In fact, I don't even think there was ever a performance bond claim. But that's always the scenario of you have a contractor that is breaching. They're late. That's not the test. The test is, okay, you've caused the job to be late, but are there any actual damages such that there can be a per diem and if it's a penalty, it is unenforceable. All right, sir. Thank you, sir. Let me ask you this. If it all had gone well, would there have been a separate contract between the developer and the MUD? There already was one. That's what I'm saying. We're talking about the contract here with the disincentive clause. I'm asking would there have been or is there a separate contract between the developer and the MUD? They already have a contract that says once the construction is completed and approved by TCEQ, then the MUD will reimburse the developer for the infrastructure. I don't know why my colleagues don't understand me pretty well. Okay, I'm sorry. I apologize. The contract that I'm looking at now are just some excerpts. The contract with the disincentive clause is between whom? The signatories are the developers and the contractor that did the construction work. Okay. And a contract between the developer and the MUD, whether it exists now or not, is a separate contract? That's correct. All right. That's all I was trying to get to, and the question could have been asked much more simply than I apparently was able to come up with. I want to start first with Flores. Flores is the answer to my friend on the other side's point that is wrong. Yes, if there's a statutory penalty scheme in Flores, it was even described as liquidated damages. But the court said, quote, the legislature intended for, quote, liquidated damages of Section 5.077C to be a penalty. It did not intend that a purchaser prove actual damages as a predicate to their recovery. So there's an example right there from the Texas Supreme Court of a statutory penalty scheme that does not take into consideration the common law rule about unenforceable liquidated damages. That's the end of that question. Now, I need to get there first, and the only way I get there first to say these economic disincentives don't come within the analysis of this unenforceable penalty common law theory that applies to contracts is to prove to this court that as a matter of law, this is a district contract. And it is a district contract because the contract says it is for the MUD, right there on the front page. The payment and performance bonds that Hanover signed said it was for the MUD. And they even had in two, I don't know why not all three, but two of the bonds actually listed the MUD as an additional obligee. So we have those undisputed facts. Then we have the testimony consistent with the case law in my 28J letter and in the footnote of my introduction to my opening brief that say this is what happens. You have developers up front the costs, the MUDs come in after the fact, and then purchase and own that infrastructure, and then they charge fees for water service. That's what happens. But going back to the statute itself, is this statute tell this court that this kind of contract that we have here, a district contract, and the provisions that I read, the three sections that I read from Chapter 49, they say, quote, shall be signed by at least a majority of the directors, or, quote, shall be a duly authorized representative of the district, or, quote, signed by a majority of the members of the board. So the Texas legislature knows how to say a district contract is one in which an authorized representative or a majority of the board of directors signs it, and they didn't do that here. The only section, the only subchapter in the entirety of Chapter 49, which is about 150 pages if you print the whole thing out, the only section that has an inapplicability section is this subchapter. And they listed a number of things that were saying this subchapter does not apply to X scenario, and they don't say that it doesn't apply to a contract that was undisputedly for the district and that the district would then . . . One distinction is, I mean, tell me if this isn't true, if it's a contract between the district and the developer, the disincentives that we're not going to worry about whether they're penalties or not are going to be paid to the district. This contract, the disincentives that are not going to be a concern or whether the penalty is not, are going to be paid to your client. It seems to me if the legislature wanted to protect somebody, there's at least a distinction that may be represented by the use of the word contract approved by the board, is that we're not going to worry about it if it's a government contract with these kinds of districts or whatever number of districts there are besides MUDs, and the penalty or rough estimate of actual damages are going to go to the governmental body and not . . . or to the MUD, maybe it's not governmental, and not to the developer. I'm just about out of time. I'll answer that question. So if we get a reduction, the developer gets a reduction because it's a district contract under this incentive schemes, then the district saves money because then it's paying us less in the reimbursement contract, or as described in the 28J letter of the pre-funding agreement. So if we save money, the district saves money because they've already agreed in advance of all this to purchase that infrastructure and then own and control it. All right, counsel. Thank you, Your Honors. Thank you both. That concludes our arguments for today. We are in recess until tomorrow at 9 a.m.